**Opinion issued January 31, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00342-CV

————————————

**SUPERBAG OPERATING CO., INC., Appellant**

**V.**

**DONATO SANCHEZ, Appellee**

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-65072**

## MEMORANDUM OPINION

Donato Sanchez sued Superbag Operating Ltd., a non-subscriber to Texas's statutory workers' compensation system, claiming that Superbag's negligence and gross negligence caused him to suffer a workplace injury. Superbag moved to compel arbitration based on its ERISA plan documents, which require arbitration

of employment-related disputes that fall within the scope of the agreement. After conducting a hearing, the trial court denied the motion to compel. Superbag appeals that ruling. We conclude that a valid agreement to arbitrate exists between Superbad and Sanchez; we therefore reverse.

## Background

Superbag maintained an ERISA benefit plan to compensate employees for any injuries that occurred within the course and scope of their employment. When Superbag hired Sanchez in October 2007, Sanchez signed Spanish versions of the relevant documents. First, he signed the

> **Superbag Operating Ltd. Benefit Plan for Employee Injuries and Arbitration Program—Acknowledgment of Receipt and Arbitration**

in which he acknowledged that

> I have received and have read (or had the opportunity to read) the Program of Benefits, the Description of the Summary of the Benefit Plan for Injuries, and the Mutual Agreement to Arbitrate Claims effective 09/01/05.

With respect to the arbitration program, the Acknowledgment declares:

> **ARBITRATION**: I acknowledge that this includes an obligatory policy of the company that requires that certain **claims or disputes (which cannot be resolved in another manner between the Company and me) must be submitted to an arbitrator**, instead of a judge or jury in the court. I understand that upon receiving this Mutual Agreement to Arbitrate Claims and to attain being an employee (or continue my employment) with the Company at any time on or after **09/01/05**, I accept and agree to comply with these requirements for arbitration. I understand that the company also

2

accepts and is in agreement to comply with these requirements for arbitration.

(Emphasis in original). The mutual agreement defines "covered claims" as "[a]ny injury suffered by Claimant while in the Course and Scope" of his employment. Sanchez also signed an

### Agreement to Arbitrate under Arbitration Policy and Procedures

This document provides:

I agree to arbitration under the Arbitration Policy and Procedures (a copy of which I have been provided), in exchange for the Company considering this employment application and agreeing also to be bound by the Arbitration Policy and Procedures, any and all claims, disputes or controversies that exist now or arise later between me and the Company or between me and any of the Company employees, officers, partners, owners or affiliate companies, including claims, disputes and controversies arising before, during and after my employment, if any.

(Emphasis in original). Sanchez also signed

### Employee's Recognition of Receipt of Arbitration Policy and Procedures

In this document, Sanchez acknowledged that he received and read a document entitled Arbitration Policy and Procedures from the Company and that he understood (1) he should read it completely, (2) it constitutes a contractual obligation between himself and the Company, and (3) it is a condition of his continued employment with the Company or of any future position with the Company to promise to submit to arbitration for any claim, dispute, or controversy, either present or future, with the Company, its officers, directors, and employees.

3

It is undisputed, however, that the term "Arbitration Policy and Procedures" in the latter two documents refer to a Superbag arbitration policy that was superseded by Superbag's September 1, 2005 "Mutual Agreement to Arbitrate Claims". It is the 2005 agreement that was included in the employee benefit materials. Sanchez did not receive a document entitled "Arbitration Policy and Procedure" from Superbag on the date of his hire.

The 2005 arbitration policy attached to the summary plan description ("SPD") is the "Mutual Agreement to Arbitrate Claims," a four-page description of the arbitration procedure. The first page of the Mutual Agreement announces that it is governed by the Federal Arbitration Act, and it further recites:

> **<u>ARBITRATION IS MANDATORY FOR COVERED CLAIMS</u>: COVERED CLAIMS SHALL BE EXCLUSIVELY RESOLVED BY BINDING ARBITRATION. WHILE BOTH CLAIMANT AND COMPANY RETAIN ALL SUBSTANTIVE LEGAL RIGHTS AND REMEDIES UNDER THIS AGREEMENT, CLAIMANT AND COMPANY ARE BOTH WAIVING ALL RIGHTS WHICH EITHER MAY HAVE WITH REGARD TO TRIAL, WHETHER JURY OR NON-JURY, IN STATE OR FEDERAL COURT FOR ANY COVERED CLAIM. CLAIMANT AND COMPANY ALSO AGREE TO WAIVE ANY RIGHT THEY MAY HAVE TO CLASS ARBITRATION OR CONSOLIDATION OF INDIVIDUAL ARBITRATIONS FOR ANY COVERED CLAIMS.**

(Emphasis in original.)

In May 2010, Sanchez was injured at work. Superbag's ERISA plan paid Sanchez's medical bills and wage replacement benefits. In October 2011, Sanchez

sued Superbag, seeking a recovery for the injuries he received in the May 2010 accident. Superbag moved to compel arbitration. Sanchez responded with an affidavit, in which he averred that he had never received the documents referenced in the acknowledgements that he had signed, that Superbag had fraudulently procured his consent to arbitration, that he was unaware that he had agreed to arbitrate his personal injury claims as a condition of his employment with Superbag, and that his consent was invalid due to procedural unconscionability.

## Discussion

### I. *Standard of review*

This proceeding arises under section 51.016 of the Texas Civil Practice and Remedies Code, which permits the interlocutory appeal of an order denying a motion to compel arbitration under the FAA.[1] TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West Supp. 2012). We review interlocutory appeals of orders denying motions to compel arbitration for an abuse of discretion, deferring to the trial court's factual determinations if they are supported by the evidence and reviewing questions of law de novo. *Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 851–52 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd).

If a party seeking arbitration carries its initial burden to prove the existence of an agreement to arbitrate, then a strong presumption favoring arbitration arises,

---

[1] 9 U.S.C.A. §§ 1–16 (West 1999 & Supp. 2012).

and the burden shifts to the party opposing arbitration to prove an affirmative defense to the agreement. *J.M. Davidson, Inc.*, 128 S.W.3d at 227. The party opposing enforcement of an arbitration agreement may invoke the defenses of unconscionability, duress, fraudulent inducement, and revocation. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001); *see AT&T Mobility LLC v. Concepción*, 131 S. Ct. 1740, 1746 (2011). To defeat arbitration, the defenses must specifically relate to the arbitration portion of the contract, not the contract as a whole. *In re RLS Legal Solutions, LLC*, 221 S.W.3d 629, 630 (Tex. 2007) (orig. proceeding). "[C]ourts should resolve any doubts as to the agreement's scope, waiver, and other issues unrelated to its validity in favor of arbitration." *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011).

## II.     *Proving Arbitrability*

A party moving to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims asserted fall within the scope of that agreement. *Provine*, 312 S.W.3d at 828–29. If the movant establishes that an arbitration agreement governs the dispute, the burden then shifts to the party opposing arbitration to establish a defense to the arbitration agreement. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999) (orig. proceeding). A party may revoke the agreement only on a ground that exists at law or in equity for the revocation of a contract. TEX. CIV. PRAC. & REM. CODE ANN.

6

§ 171.001 (West 2005). "Once the trial court concludes that the arbitration agreement encompasses the claims, and that the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001).

We apply ordinary state-law principles governing contracts to determine whether the parties formed an agreement to arbitrate. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227–28 (Tex. 2003); *see Sherer v. Green Tree Serv'g LLC*, 548 F.3d 379, 381 (5th Cir. 2008). "[A]bsent unmistakable evidence that the parties intended to the contrary, it is the courts rather than the arbitrators that must decide 'gateway matters.'" *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005).

An employer may enforce an arbitration agreement against an at-will employee if the employee received notice of the employer's arbitration policy and accepted it. *In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161, 162 (Tex. 2006). To determine whether an employee was notified of the policy, we examine the underlying agreement, as well as all of the communications between the employer and employee. *Dallas Peterbilt*, 196 S.W.3d at 162 (citing *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002), and *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986)).

### III. Analysis

Superbag contends that it has produced an executed arbitration agreement, and Sanchez failed to meet his burden to prove a valid defense to avoid arbitration. Sanchez responds that the acknowledgements that he signed refer to two different arbitration plans, each containing different arbitration procedures; thus, the parties never formed a valid agreement to arbitrate. Sanchez further responds that Superbag fraudulently procured Sanchez's agreement to arbitrate his claims because he never received a copy of the agreement to arbitrate, assuming that an agreement to arbitrate even exists. Finally, Sanchez responds that any agreement to arbitrate is void due to procedural unconscionability. We address these issues in turn to determine whether the record supports the trial court's refusal to compel arbitration.

#### A. Contract formation

For an agreement to be enforceable, the parties must mutually consent to its subject matter and essential terms. *John Wood Group USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 20 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); *see FORECA, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744 (Tex. 1988). The party seeking to compel arbitration must satisfy these basic requirements and show that a valid arbitration agreement exists before they are entitled to invoke the presumption favoring arbitration. *See Sherer*, 548 F.3d at 381; *see also In re Kellogg Brown & Root,*

8

*Inc.*, 166 S.W.3d 732, 737–38 (Tex. 2005) (stating that presumption favoring arbitration arises only after party seeking to compel arbitration establishes valid agreement to arbitrate, because purpose of FAA is to "'make arbitration agreements as enforceable as other contracts, not more so'") (quoting *Bridas S.A.P.I.C. v.. Gov't of Turkmenistan*, 345 F.3d 347, 354 n.4 (5th Cir. 2003)).

The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did. *Id*. The question of whether a contract contains all the essential terms for it to be enforceable is a question of law. We determine whether terms are material or essential on a contract-by-contract basis, depending on the subject matter of the contract at issue. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) ("Each contract should be considered separately to determine its material terms.").

Here, the evidence shows that Superbag and Sanchez agreed that they would resolve their disputes concerning workplace injuries in arbitration. The parties do not dispute that Sanchez's claims fall within the scope of that arbitration agreement. *See Sherer*, 548 F.3d at 381. Sanchez, however, contends that the "Mutual Agreement to Arbitrate Claims" and the undated acknowledgment of receipt of "Arbitration Policy and Procedure" create irreconcilable terms that preclude a meeting of the minds. He points to differing terms that describe the

9

designated arbitral body, the number of arbitrators that would decide the case, and the availability of pre-arbitration mediation and post-arbitration appeal.

The mutual agreement to arbitrate is attached to the SPD.  It explains: "The effective date of this Mutual Agreement to Arbitrate Claims . . . is **09/01/05**.  If the Claimant receives notification prior to beginning to work in the Company, the commencement of work in the Company shall constitute an acceptance of the terms and conditions of this Agreement."  The acknowledgment Sanchez signed reiterates that the mutual agreement to arbitrate claims applies to disputes arising "on or after **09/01/05**." (Emphasis in original.)  The arbitration policy and procedure, in contrast, is silent concerning the date of its implementation, and, although Sanchez acknowledged it, he did not receive the policy at the time of hiring, because it had been superseded by the mutual agreement to arbitrate.  The mutual agreement alone contains a provision addressing its effective date.  Under rules of contract construction, absent other evidence, the more specific provision denoting the applicable date controls, and thus it determines which document governs the arbitration proceedings.  *See CM Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 782 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *cf. Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994) ("For example, when a contract provision makes a general statement of coverage, and another provision specifically states the time limit for such coverage, the more specific provision will

10

control.").[2]  We hold that the parties reached an agreement that they would arbitrate any dispute arising out Sanchez's on-the-job injuries; and the two signed documents do not create an irreconcilable conflict as to which arbitration procedure governs, because one is effective as of a date certain.

### B. Fraud and procedural unconscionability

By signing the acknowledgment, Sanchez received notice of the mutual agreement to arbitrate claims. *See In re Peterbilt Ltd., L.L.P.*, 196 S.W.3d 161, 163 (Tex. 2006).  Superbag correctly observes that the Texas Supreme Court's decision in *Peterbilt* is dispositive of Sanchez's fraudulent inducement claim that he never received a copy of the agreement to arbitrate. *See id.* (holding that, despite employee's contention that he did not receive employer's "Summary Plan Description of Mutual Agreement to Arbitrate Claims," signed acknowledgment that he "received and carefully read or been given the opportunity to read" summary constituted effective notice and unequivocally made employee aware of arbitration agreement); *see also In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) ("Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms.").

---

[2]  We further note that Sanchez neither reviewed nor had access to the defunct arbitration policy at the time of hire.

Sanchez also challenges the enforcement of the arbitration agreement under section 406.033 of the Texas Labor Code, which limits an employer's ability to obtain contractual waivers of claims. *See* TEX. LAB. CODE ANN. § 406.033(e)–(f) (rendering invalid pre-injury waiver of cause of action or right by employee of nonsubscriber). Section 406.033 is inapplicable; the agreement requires only that Sanchez try his claims in an arbitral forum, not that he waive them. "An arbitration agreement covering statutory claims is valid so long as 'the arbitration agreement does not waive substantive rights and remedies of the statute and the arbitration procedures are fair so that the employee may effectively vindicate his statutory rights.'" *In re Poly-Am., LP*, 262 S.W.3d 337, 349, 352 (Tex. 2008) (quoting *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002)).

Finally, Sanchez argues that the arbitration agreement is procedurally unconscionable. "[T]he basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001) (citing TEX. BUS. & COM. CODE ANN. § 2.302 cmt. 1). "The principle is one of preventing oppression and unfair surprise and not of disturbing allocation of risks because of superior bargaining power." *Id.* Procedural unconscionability refers to the fairness

12

of the circumstances surrounding adoption of the arbitration provision. *In re Halliburton*, 80 S.W.3d 566, 571 (Tex. 2002). The few cases in which courts have found procedural unconscionability involve situations in which one of the parties was incapable of understanding the agreement without assistance, and the other party did not provide that assistance. *See In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 377 (Tex. App.—Texarkana 1999, orig. proceeding [mand. denied]) (holding that employee did not knowingly consent to contract to compel arbitration of personal injury claim where record showed that employee was functionally illiterate, other workers who presented employee with documents containing arbitration agreement did not themselves understand agreement, and no one else explained document to employee); *Prevot v. Phillips Petroleum Co.*, 133 F. Supp. 2d 937, 940–41 (S.D. Tex. 2001) (holding that plaintiffs were not bound to arbitration agreement due to procedural unconscionability where plaintiffs did not speak or read English and agreement was not translated or explained to them). Superbag supplied Spanish versions of its policies to its prospective employees, including Sanchez. Notably, Sanchez signed the Spanish versions of the agreements. Nothing in the record shows that Superbag rebuffed any attempt by Sanchez to obtain more information. A suggestion that Sanchez would not have agreed to the arbitration policy had he better understood it, without more, does not demonstrate procedural unconscionability. *See In re Palm Harbor Homes, Inc.*,

13

195 S.W.3d 672, 679 (Tex. 2006) (rejecting employees' claim that "they did not voluntarily waive their rights to a jury trial and that they are unsophisticated persons who, if the concept of arbitration had been explained to them, would not have signed the arbitration agreements" as basis for invalidating arbitration agreement). We hold that Sanchez failed to satisfy his burden to overcome the FAA's strong presumption favoring arbitration; accordingly, the trial court erred in denying the motion to compel arbitration.

## Conclusion

We reverse the trial court's order and remand for entry of an order compelling arbitration and abating the proceedings in the trial court.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.